**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| **v.** | ) | **Case No. 18-00007-01-CR-W-RK** |
| | ) | |
| **CALVIN WILLIFORD,** | ) | |
| | ) | |
| *Defendant.* | ) | |

**DEFENDANT'S SEALED
SENTENCING MEMORANDUM**

Defendant Calvin Williford, through counsel, respectfully submits this Memorandum in advance of his sentencing hearing set for September 20, 2018. This memorandum incorporates Calvin's objection to a three-level increase for role in the offense and an analysis of the sentencing factors under 18 U.S.C. § 3553(a). This memorandum also details the extensive efforts Calvin has made to cooperate with the Government. For the reasons set forth below, we respectfully ask the Court to consider a sentence of probation.

## I. Introduction

Calvin Williford is a kind and decent man. His unlawful conduct in this case is starkly incongruent with the man that is loved and respected by many and the man who has helped numerous people in their darkest times of need. The

1

sentencing character letters[1] repeat an overwhelming theme that Calvin is a loving, supportive, genuine and loyal family member, friend, mentor and sponsor to many.

Calvin is 60 years old. He has devoted his entire life to public service with a focus on community initiatives such as poverty, serving the homeless, substance abuse treatment and affordable housing. As part of his involvement in the community, Calvin has been involved in politics and campaigns throughout most of his life. He began participating in local politics at the age of 12 and served key roles in Ronald Reagan's campaign during his college years and early adulthood.

Calvin has also quietly and privately devoted his life to substance abuse treatment and counseling—both battling addiction himself as a young adult and later serving as a mentor, sponsor and adviser to over 50 people who have sought treatment for addiction. Calvin has remained sober since 1988. For a significant period of time, Calvin worked directly in the substance abuse treatment field helping many people on their road to sobriety.

Calvin provided substantial assistance to the investigating authorities. ███

███████████████████████████████████████████████

██████████████████████████████      ██████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

---

[1] The sentencing letters will be submitted separately to the Court.

Calvin voluntarily entered a plea of guilty to the non-violent, white collar offense of conspiracy in violation of 18 U.S.C. § 371. He freely admitted that certain campaign committee funds were used by Mike Sanders and himself for personal reasons, including funding their trips to Las Vegas. Calvin also admitted that, at the direction of Mr. Sanders, he arranged for individuals to cash campaign committee checks to generate cash to hire other campaign workers who were not reported on the Missouri Ethics Commission disclosure reports. Calvin has accepted full responsibility for his unlawful actions. He is extremely remorseful for his conduct. His guilty plea saved the government substantial resources and avoided a public and lengthy trial.

Calvin was released on bond on January 26, 2018. As verified in the PSIR, he has not had any bond violations and has complied with all conditions of pretrial release. PSIR at ¶ 3. In addition to his adjustment on bond, Calvin has shown a desire and an ability to rehabilitate himself since leaving the Jackson County Executive's Office. He moved to St. Joseph, Missouri, to provide some distance from his old life in the Jackson County political community. This move was extremely beneficial for Calvin. He became involved in volunteer efforts in St. Joseph through Community Missions. He works as a receptionist and as an assistant at the Haven House, a homeless shelter. He also works at a thrift store. He is involved in distributing bottled water to homeless people on hot days. He continues to attend AA and NA meetings and he continues to support and sponsor

numerous people who are battling substance abuse and addiction. ███████

████████████████████████████████████████████████████

██ ███████████████████████████████████ He is enrolled in a Spanish class and has obtained employment at a local restaurant. Calvin has demonstrated that he has the ability to follow court orders, to abide by the law, and to pursue a productive and meaningful life.

The issues to be addressed at the sentencing hearing are limited to one guideline objection regarding role in the offense, the extent of the downward departure for substantial assistance, and the overall sentence to be imposed.

## II.     Objection to 3 Level Increase for Role in the Offense

The presentence investigation report recommends a 3-level increase for role in the offense under U.S.S.G. § 3B1.1(b). PSIR at ¶ 36. This enhancement was not anticipated by the parties during plea negotiations. Under this guideline provision, if the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, the offense level should be increased by 3 levels. This enhancement was recommended by the probation office based on the fact that Calvin arranged for various people to cash campaign committee checks. Calvin does not dispute engaging in this conduct. He disputes, however, that the check-cashers constituted "participants" in criminal activity.

4

The Guidelines define "participant" as a person "who is criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. § 3B1.1, comment. (n.1). Further, a person who is not criminally responsible for the commission of the offense is not a "participant." *See id.* The various check-cashers utilized by Calvin were not aware of the illegal scheme or that Mike Sanders and/or Calvin were using a portion of the campaign funds or cash for personal reasons. The check-cashers who Calvin worked with believed they were assisting in cashing checks so the cash could be used to hire additional campaign workers (some of whom were homeless and/or did not have bank accounts) to perform legitimate campaign work. The PSIR confirms that some of the check cashers "assumed the cashing of checks was legal or legitimate." PSIR at ¶ 37. Many of the check-cashers who Calvin worked with were also involved in, and were paid for, campaign work themselves. Calvin did not exert any degree of control or authority over the campaign workers or check-cashers other than asking them for their help.

The check-cashers did not know about the existence of campaign reports or how the transactions were characterized in the various committee reports that were prepared and filed under the supervision of Mr. Sanders. The check-cashers who Calvin dealt with were not aware that he or Mr. Sanders used the monies for personal reasons. Because the offense in this case was conspiracy to commit wire fraud, a criminal participant must have knowingly entered into an agreement with

5

another person to commit wire fraud, which requires a specific intent to defraud someone of money or property. The check-cashers who Calvin worked with did not act with any such specific intent and knowledge. As a result, they cannot be deemed participants under the role in the offense guideline. Therefore, there should be no role in the offense adjustment to the offense level under section 3B1.1.

It should also be noted that this case did not involve a formal or structured criminal organization or entity. The uncontested amount of loss is $59,862.50 that occurred over a period of years. Only two people were prosecuted in this case. The commentary to section 3B1.1 suggests that a larger criminal enterprise or organization should be present for a role in the offense adjustment to be applicable. Application Note 4 lists a number of factors to consider, including the exercise of decision-making authority, the nature and participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. U.S.S.G. § 3B1.1, comment. (n.4). Further, the background note states as follows:

> In relatively small criminal enterprises that are not otherwise to be considered as extensive in scope or in planning or preparation, the distinction between organization and leadership, and that of management or supervision, *is of less significance than in larger*

> *enterprises that tend to have clearly delineated divisions of responsibility.* This is reflected in the inclusiveness of § 3B1.1(c).

U.S.S.G. § 3B1.1, background (emphasis added). The increase under section 3B1.1(c) is only 2 levels. Although we believe that there should no role in the offense adjustment, this background note supports the notion that perhaps a 2-level increase should apply under section 3B1.1(c) where the conduct did not involve a large criminal organization or enterprise, was small in scope, and did not involve "clearly delineated divisions of responsibility" amongst many participants. *See also* U.S.S.G. § 3B1.1, background ("The Commission's intent is that this [role] adjustment should increase with both the size of the organization and the degree of the defendant's responsibility."). It is for these reasons that there should be no enhancement for role in the offense. Alternatively, the Court should consider a 2-level enhancement under section 3B1.1(c) consistent with the background commentary.

Further, it should be noted that Calvin has not contested the 2-level increase for abuse of trust. *See* PSIR at ¶ 37. As the sole factual basis for this enhancement, the PSIR observed that, as Chief of Staff, Calvin used several Jackson County employees as check-cashers. *Id.* Thus, his behavior with respect to check-cashers is being accounted for in the abuse of trust enhancement as well. It should not also be double-counted in the role adjustment.

7

**III.**



The guidelines direct the Court to consider a number of factors in determining the appropriate reduction for substantial assistance to the authorities. *See* U.S.S.G. § 5K1.1(a)(1)-(5). These factors include the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance; the truthfulness, completeness and reliability of any information or testimony provided by the defendant; the nature and extent of the defendant's assistance; any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance; and the timeliness of his assistance. *See id.*

Calvin's assistance was significant and useful █████████████████

████████ ███████████████████████████████ █

███████████████████████████████████████████

████████████████████████████ He did not suffer any injury or risk of danger—this factor is rarely present in a white-collar case. Finally, Calvin's assistance was timely. It is respectfully submitted that all applicable factors weigh in Calvin's favor, ████████████████████████

██████████████████████████████████.

### IV.    Sentence to be Imposed

The PSIR recommends an advisory guideline range of 15 to 21 months prior to departure. If the Court grants the objection for role in the offense, the advisory guideline range would be calculated as follows:

| | | |
|---|---|---|
| Base Offense Level | 6 | |
| Loss | 6 | |
| Abuse of Trust | 2 | |
| Acceptance | <u>-2</u> | |
| Total | 12 | (10 to 16 months in Zone C) |

If the Court assesses only a 2-level increase for role in the offense, the advisory guideline range would be calculated as follows:

| | | |
|---|---|---|
| Base Offense Level | 6 | |
| Loss | 6 | |
| Role | 2 | |
| Abuse of Trust | 2 | |
| Acceptance | <u>-3</u> | |
| Total | 13 | (12 to 18 months in Zone C) |

If the PSIR stands, the total offense level is 14 with an advisory guideline range of 15 to 21 months (Zone D) prior to departure.

Under either party's recommendation for a 5K1.1 departure,[3] Calvin falls within Zone B of the Guidelines. This is without a variance or consideration of the section 3553 factors in this case. Under Zone B, the Court has discretion to impose a sentence of probation with various conditions, including home detention.

---

[3] It is counsel's understanding the Government will recommend a 35% reduction for substantial assistance.

Although a sentence of probation is consistent with the advisory guidelines, the guidelines are now only one of many sentencing factors set out in 18 U.S.C. § 3553. *See also Gall v. United States,* 128 S. Ct. 587, 597 (2007); *Kimbrough v. United States,* 128 S. Ct. 558, 564 (2007).

Section 3553 provides that a district court shall impose a sentence "sufficient, but not greater than necessary" to comply with the various purposes for sentencing listed in 18 U.S.C. § 3553(a)(2)(A) – (D) of the Sentencing Reform Act. 18 U.S.C. § 3553(a). Although the Guidelines remain the starting point and initial benchmark for sentencing, a sentencing court must make an individualized assessment based on the facts presented and the other statutory sentencing factors. *See Beckles v. United States,* 137 S. Ct. 886, 894 (2017). The Supreme Court has recognized that a sentencing judge must consider every convicted person as an individual and every case as a "unique study" in the human failings that sometimes mitigate, and sometimes magnify, punishment. *Gall,* 128 S. Ct. at 598.

The Eighth Circuit has recently observed that a sentencing court has wide latitude in imposing a sentence that varies significantly from the advisory guideline range if the section 3553(a) factors are met and properly explained on the record. *See United States v. Cole,* 765 F.3d 884 (8th Cir. 2014). The defendant in *Cole* was found guilty after a jury trial with conspiracy to steal approximately $33 million from Best Buy over a four-year period of time and evasion of over $3 million in taxes. At sentencing, the district court imposed a sentence of 3 years

12

probation for Cole despite an advisory guideline range of 135 to 168 months.  *See id.* at 885.

In explaining its sentence, the district court relied on the various 3553 factors, including that Cole was a relatively passive participant in the fraud, that Cole faced restrictions of probation and lifelong restrictions of being a felon, that Cole had a better chance of rehabilitation with family support and employment, that Cole had no prior contact with law enforcement, and that Cole was "markedly different" from "most fraudsters who appear before the court."  *Cole,* 765 F.3d at 886.  The Eighth Circuit affirmed the variance and sentence of three years probation, noting that review of the substantive reasonableness of a sentence is for abuse of discretion and is "highly deferential."  *Id.; see also United States v. Feemster,* 572 F.3d 455, 464 (8th Cir. 2009).

Unlike the defendant in *Cole,* Calvin has fully cooperated and voluntarily entered a plea of guilty.  Further, the requested sentence of probation in this case does not require a variance from the advisory guideline range after the substantial assistance departure is properly considered.  A sentence of probation is also consistent with the section 3553 factors discussed below.

> **A.**   **Nature and Circumstances of the Offense**
> **18 U.S.C. § 3553(a)(1)**

The nature and circumstances of the offense neither compel a sentence of incarceration nor preclude a sentence of probation.  The offense of conviction did

13

not involve a violent crime or a controlled substance offense. The offense did not involve assaultive behavior. The offense in question involved funds from committees controlled by Mr. Sanders. The offense did not involve public or government funds. The agreed upon loss in this case was $59,862.50 which occurred over a span of years. *See* PSIR at ¶ 34.

Although economic offenses are serious, there are no aggravating factors in this case. There is also no evidence that Calvin reaped a large financial gain as a result of the alleged conduct. Ironically, Calvin did not need to commit the offenses in question to fund his lifestyle or the trips in question. He had a good career, made a good salary, lived relatively debt-free and had plenty of disposable income. Calvin is sincerely and deeply remorseful for his conduct and will discuss with the Court at sentencing that his conduct was stupid and arrogant.

It is also important to recognize that Calvin did not design or create the scheme to use campaign funds for personal reasons. He was introduced to this conduct by Mr. Sanders. ███████████████████████████████ ████████████████████████████. Calvin had a deep sense of loyalty to Mr. Sanders based on their longstanding friendship. Calvin had previously met Mr. Sanders through his work with ADAPT. Mr. Sanders was supportive of substance abuse issues and Calvin's company. Calvin and Mr. Sanders became even closer friends during this time frame when Calvin hit the lowest point in his life—he lost his mother and he lost a long-term relationship. Mr. Sanders also battled personal

issues at the same time when his son was born prematurely and experienced significant health issues. Mr. Sanders and Calvin leaned on each other during these stressful times.

Later, Calvin went to work for Mr. Sanders in a variety of positions, including Chief of Staff. Calvin loved being the "number two" guy and felt like he could make a real difference in the community in his position. He was extremely loyal to Mr. Sanders and supported his agendas—both good and bad. Calvin does not blame Mr. Sanders and takes full responsibility for his behavior. But loyalty and close friendship played a role in desensitizing Calvin to participating in illegal conduct.

### B. Personal History and Characteristics of the Defendant 18 U.S.C. § 3553(a)(1)

Calvin has a Criminal History Category of I with 0 criminal history points. His only criminal history involves a municipal matter and a bad check diversion. Importantly, Calvin does not have a violent past or convictions for any felony offenses.

Typically, substance abuse history would be a red-flag in a defendant's background. In Calvin's case, substance abuse is a badge of success and perseverance and presents a compelling section 3553 factor. In 1988, Calvin was battling cocaine abuse and alcohol dependency. After a family intervention, Calvin made the difficult decision of seeking help for his substance abuse

15

problems.  Calvin now proudly recalls the specific date of his last drink—July 14, 1988--while he was on the plane to California for drug treatment.

After in-patient treatment, Calvin returned to Kansas City to be near family. He has participated in AA and NA meetings consistently since 1988, first as a participant, and later as a sponsor/mentor to over 50 people.  He received outpatient counseling at Charter Hospital in Kansas City.  His success and positive attitude in treatment ultimately led Charter to offering him a job after treatment. He worked for Charter Hospital, and later the Kansas Institute, for approximately 4 years.  He then became Vice President of the National Council for Alcoholism and Drug Dependence and served in that role for 5 to 6 years.  He was recruited by Alvin Brooks to work on substance abuse and addiction issues for the Ad Hoc Group Against Crime, serving in that role for approximately 2 years.  He then owned and managed his own drug treatment agency (ADAPT) for several years. As noted above, Calvin met Mr. Sanders during the time period of ADAPT and eventually went to work for Mr. Sanders in the prosecutor's office and then in the County Executive's Office.

Calvin has continued to participate in NA and AA activities to this day. Many of the sentencing letters speak of Calvin's role and support in achieving sobriety.  As examples, ███████████████████ wrote that "the turning point in Calvin's life was his completion of rehab in 1988."  She confirmed that he has helped numerous other people who are battling drug and alcohol addictions.

16

█████████████ wrote that Calvin helped him through a period of severe clinical depression and anxiety with "an extraordinary level of support, patience and generosity." █████████████ observed that Calvin helped countless others over more than two decades with a display of "great generosity, kindness, patience, and selflessness" and that Calvin "is one of the most fair-minded, compassionate, and decent people I know."

█████████████ wrote that he was lost and troubled through alcoholism and drug addiction. He described meeting Calvin as the single turning point in his life. He had heard about Calvin and his work for the National Council on Alcoholism and Drug Dependence. Through Calvin, ███████████ became a volunteer and then an employee. Calvin was "a mentor, an inspiration and a dear friend." ████

████████ witnessed Calvin's "profound impact on the community and the individual lives of people he touched." █████████████ credits Calvin's positive impact for turning his life around.

█████████████ wrote that he met Calvin when he was a very troubled young man attempting to get clean and sober. He met Calvin who was volunteering at a substance abuse center. Calvin became his sponsor. ████████████ wrote that he "was not ready to fully surrender to my addictions and struggled to stay clean and out of the court system. Calvin patiently worked with me and kept taking my calls. He never hesitated to tell my what I needed to hear even when he knew it would be

17

painful." ███████ celebrated 23 years of sobriety and said he could not have achieved this without Calvin.

████████████met Calvin over 25 years ago in an AA meeting. He wrote that Calvin "thoughtfully devoted his time and care to me" and displayed "empathy, knowledge and helpfulness valuable to me as I worked through my challenges." ███████ has also witnessed Calvin offer generosity and support to countless other people. "His devotion to these matters, serving the homelessness [sic], and issues of poverty outclass anyone else I know. His work with other alcoholics and drug addicts is tireless through his involvement with AA. He never skips a chance to be helpful to those in recovery."

As noted earlier, Calvin's commitment to volunteerism has not stopped since the pendency of this case. After he moved to St. Joseph, he continues to participate in NA and AA. He volunteers for Community Missions as a receptionist at a homeless shelter and as a worker at a thrift store. He hands out water to homeless people on hot days. He is involved in community efforts to address poverty and homelessness in the greater St. Joseph area.

The character letters also reveal that Calvin chose volunteerism while traveling on "vacation." Before this case, Calvin would frequently travel to Guatemala and El Salvador to assist with various shelters and projects in those countries. At times, he placed his volunteerism over personal safety in these

18

countries. Several of the sentencing letters confirm his volunteerism efforts in these countries.

Calvin has recently demonstrated his ability to continue rehabilitation and remain productive. He is taking a Spanish class at a local college and he has a part-time job at a restaurant. He has also focused on physical fitness and nutrition. He has truly tried to take a very stressful and embarrassing situation and turn it into a positive situation. These examples demonstrate that Calvin has the tools to succeed and to remain a productive member of society. Oddly, Calvin's current legal predicament has changed his life for the better.

### C. The Seriousness of the Offense, Respect for the Law, Just Punishment, Deterrence and Protection of the Public 18 U.S.C. § 3553(a)(2)(A)-(D)

There is nothing about the nature of this offense to suggest that Calvin is likely to recidivate or that the public needs to be protected from him. Specific deterrence is simply not a significant factor in this case. With regard to general deterrence, a lifelong felony conviction, a sentence of probation, public shaming and media coverage, loss of reputation, loss of a career, and a forfeiture judgment are all factors that are sufficient to promote general deterrence. The lifelong restrictions of being a convicted felon and the restrictions of probation have been recognized as 3553(a) factors to support a significant variance from the advisory guideline range. *See Cole,* 765 F.3d at 886. No rational person who is aware of Calvin's plight would be tempted to engage in similar illegal activities. Such a

19

sentence with life-changing consequences also promotes respect for the law and serves as just punishment for this type of offense. By contrast, a sentence of probation with home confinement also sends a message that there is a benefit to full and complete cooperation and full acceptance of responsibility.

### D. The Kinds of Sentences Available
### 18 U.S.C. § 3553(a)(3)

The offense of conviction is a Class D felony with no mandatory minimum sentence. Calvin is statutorily eligible for a sentence of probation. As recognized above, such a sentence is also consistent with the sentencing guidelines after a downward departure for substantial assistance is properly considered. Calvin is a particularly good candidate for probation as he has complied with all bond conditions and has demonstrated an ability and willingness to follow the rules and restrictions of this Court.

### E. The Need to Provide Restitution
### 18 U.S.C. § 3553(a)(7)

This factor is not applicable in this case. The parties have agreed to a forfeiture judgment. Due to the unique nature of the facts of this case, it is respectfully submitted that restitution is not proper due to the nature and status of the committees involved.

### IV. Conclusion

It should be the goal of any sentencing scheme to prevent unnecessary incarceration and to limit prison sentences to those individuals who pose the

greatest risk to society. Further, a sentencing scheme should fully consider a defendant who cooperates with the Government and accepts responsibility for his or her behavior. For the reasons discussed above, Calvin Williford is deserving of a mitigated sentence of probation. His background is unique, is compelling and paints a far different picture from that of the typical defendant seen in federal court. Calvin has demonstrated he has the tools to succeed. He has demonstrated he has the tools to successfully complete probation. He has demonstrated that he can be productive even with a felony conviction and under stressful circumstances. We acknowledge that probation is a "big ask" in any federal case—but we sincerely believe the facts and circumstances justify such a sentence in Calvin's case.

WHEREFORE, based on the foregoing, Defendant Calvin Williford respectfully prays that this Court sustain his objection to the PSIR, ████████████ ███████████████████████████████████, and that this Court impose a non-custodial sentence consistent with the facts and sentencing factors addressed herein.

21

Respectfully submitted,

GADDY LAW LLC

By: /s/ *W. Brian Gaddy*
W. BRIAN GADDY, #42701
600 Broadway Blvd., Ste. 670
Kansas City, MO 64105
Tel: (816) 221-8989
Fax: (816) 945-6340
bgaddy@gaddylawllc.com
***Counsel for Defendant Williford***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 13th day of September, 2018, the foregoing motion was electronically filed under seal with the Clerk of the Court. Counsel has also served opposing counsel of record via email, including:

Lauren Bell
Trial Attorney
Department of Justice
1400 New York Ave., N.W.
Washington, DC 20530

*/s/ W. Brian Gaddy*
***Counsel for Defendant Williford***

22